(92 South. 217)

No. 24993.

STATE v. OLIVER.

(Jan. 2, 1922. On the Merits, May 15, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law ⬅⟿1086(8), 1110(9)—Record must show proper indorsement and filing of indictment; otherwise, will be remanded for correction.**

The record on appeal must show that the indictment was indorsed "a true bill," and the indorsement signed by the foreman of the grand jury, and that it was filed in open court; and, when it does not, the case will be remanded for correction and completion of the record.

2. **Criminal law ⬅⟿1110(9)—Correction or completion of record must be conducted contradictorily with defendant.**

On remand of a case to the district court for correction or completion of the record, such correction or completion must be conducted contradictorily with defendant and his attorney.

On the Merits.

3. **Criminal law ⬅⟿594(3)—Continuance properly refused where witnesses could not be found and it was not alleged that they could be found later.**

A continuance was properly denied where alleged material witnesses could not be found and the motion did not allege that it would be possible to find them later.

4. **Criminal law ⬅⟿1166½(7)—Allowing peremptory challenge to absent juror not injurious.**

The irregularity, if any, in allowing a peremptory challenge by the state to an absent juror in order to avoid delay, was not injurious, where the right to peremptorily challenge the juror on his voir dire was unquestioned.

5. **Homicide ⬅⟿156(1), 158(1)—Evidence of circumstances preceding killing, and of conversation in which defendant made threat, admissible to show malice.**

Where, prior to a homicide, the decedent, defendants, and others were engaged in a crap game in which one of the defendants pawned his pistol, and such defendant was searching for decedent from the time the game ended, and he redeemed his pistol until the shooting occurred, evidence concerning the game and the procuring of the pistol, and of a conversation between the participants in the game other than the deceased in which defendant made a threat against deceased, was admissible to show malice.

6. **Criminal law ⬅⟿1169(1)—Evidence of declaration of decedent following shooting held not injurious.**

Testimony that after decedent was shot he told a witness to get his wife, and said he had been killed, was not injurious.

O'Niell, J., dissenting in part.

Appeal from Fifteenth Judicial District Court, Parish of Beauregard; Jerry Cline, Judge.

Charles Oliver, alias Steam Shovel, was convicted of murder, and he appeals. Affirmed.

S. W. Plauche, of Lake Charles, for appellant.

A. V. Coco, Atty. Gen., Griffin T. Hawkins, Jr., and Mark C. Pickrel, Asst. Dist. Atty., both of Lake Charles, and T. S. Walmsley, of New Orleans, for the State.

By the WHOLE COURT as then constituted.

O'NIELL, J. Appellant was convicted of the crime of murder and condemned to suffer the penalty of death. No argument was made in this court, nor brief filed, by the attorney appointed to represent him.

[1] The record contains five bills of exception reserved to the rulings of the trial judge. We refrain from considering, at this time, the propositions submitted by the bills of exception, because the record does not show that a true bill was ever filed in court or found by the grand jury. The copy of the indictment in the record bears the official signature of the district attorney, the statement, "Filed Oct. 11, 1921," and the official signature of a deputy clerk; but it does not bear the indorsement "A true bill," or the signature of the foreman of the grand jury, or any other indorsement, for that matter. The minutes of the court, of the proceedings had on October 11, 1921, are as follows, viz.:

"Monday, October 11, 1921. Court met pursuant to adjournment, his honor Jerry Cline, judge, presiding, with M. M. Wood, deputy sheriff, and S. H. Jones, deputy clerk, in attendance.

"The grand jury, through their foreman, also reports the following true bills, which were ordered filed and warrants issued for the accused:

"State of Louisiana v. Charles Oliver, alias Steam Shovel, and John Epps, No. 1885. Charge, Murder. To the bar personally come the accused, Charles Oliver, alias 'Steam Shovel,' and John Epps, and, being formally arraigned, each pleaded not guilty. On motion of the district attorney, this case is fixed for October 18, 1921."

It is possible that the title and docket number of the case, as stated in the last paragraph of this entry on the minutes, has reference to the preceding paragraph, and denotes a case in which "a true bill" was reported; but that is not at all certain, because this last paragraph of the minute entry is a complete statement of what occurred. The next following entry on the minutes, of date October 12, 1921, shows merely that an attorney was then appointed to represent the defendant, Charles Oliver.

[2] It may be that "a true bill" was indorsed on the indictment and signed by the foreman of the grand jury, and that it was filed in open court. If that be true, the clerk who made up the transcript of appeal has neglected to copy the indorsement and has omitted a copy of an important entry in his minutes. We shall therefore remand the case to the district court for a correction or completion of the record, if it be not correct or complete; which correction or completion of the record, if it be not correct and complete, must be conducted contradictorily with the defendant and the attorney appointed to represent him.

It is ordered that this case be remanded to the district court, and that a copy of the transcript of appeal be returned to the clerk of said court, for a correction and completion of the record, if it be not correct and complete, and that the transcript be returned to this court within 60 days from the date of this order.

### On the Merits.

By the WHOLE COURT.

PROVOSTY, C. J. Charles Oliver (alias Steam Shovel), the accused, was indicted jointly with one John Epps for the murder of one Jack Donald, and was found guilty as charged, and sentenced to be hanged.

[3] The first bill of exception is to the refusal of a continuance applied for on the ground of the absence of material witnesses. The return of the sheriff on the summonses showed that the witnesses could not be found, and the motion for continuance did not allege that it would be possible to find them later.

The ruling was correct.

[4] An order for 15 de talibus jurors having been made, and 14 of them having been

duly summoned, and having appeared, and 1 of them not having been properly summoned, and being absent, the prosecution, in order to avoid delay, challenged peremptorily this absent juror. The accused objected to the trial being proceeded with before the juror had been duly summoned. The irregularity, if such it was, of allowing this peremptory challenge, was certainly not injurious to the accused, since the right of the prosecution to peremptorily challenge the juror on voir dire could not be, and is not, questioned.

[5] The next two bills relate to the admission of evidence of the happenings immediately before the homicide. In a game of craps in which the decedent, the two accused, and two others were engaged, the accused, having lost all his money, pawned his pistol to one Hagen for more money; and, having lost that, went to his house and got $60, all of which he soon lost, except $15, and $5 which he gave to Hagen in redemption of the pistol. The pistol was not then returned to him; it having been given to Hagen's wife for safe-keeping. When the game broke up, John Epps got the pistol from Hagen's wife, and gave it to accused; and accused came to where the late participants in the game, except decedent, were standing, and in the course of the conversation made the statement:

"I am going to stick him" (decedent) "if I have to do it in broad daylight, and I may have to throw him away."

Evidence was allowed to go in as to this game and as to this procuring of the pistol, and as to the conversation. The judge says:

"Other testimony shows that the accused was searching for the deceased from the time the gambling game ended until the shooting occurred, and that the shooting was done with the pistol handed to the accused by John Epps. The incidents were in quick succession, all closely connected with each other and thereby with the shooting itself. They were highly relevant and important in proving motive and malice."

The circumstances thus immediately preceding the fatal event, and contributing to bringing it on, were certainly relevant; and evidence of them was certainly admissible for showing malice.

[6] A witness testified that the decedent, after having been shot, told him to get his wife; that he had been killed.

This testimony was objected to. The trial judge says of it:

"The statement was part of the res gestæ; and at all events was not injurious to the defendant. It contained no charge against him; gave no account of what had occurred, and meant nothing more than a statement of what was already perfectly obvious—that the man was badly hurt, and wanted his wife to be informed of it."

Evidently, the admission of this evidence was not injurious, and therefore is not ground for reversal.

Judgment affirmed.

O'NIELL, J., dissents. A part of the proceedings in the case, the appointment of an attorney for the accused, was had on a dies non, October 12th.